## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL CASE NO. 3:10-CV-00568-GCM-DCK

| | |
|---|---|
| KATHERINE E. WEAVER, )<br><br>Plaintiff, )<br><br>v. )<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security, )<br><br>Defendant. )<br>_____ ) | **MEMORANDUM AND**<br>**RECOMMENDATION** |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 10) and Defendant's "Motion For Summary Judgment" (Document No. 12). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Summary Judgment" be denied; that Defendant's "Motion For Summary Judgment" be granted; and that the Commissioner's decision be affirmed.

## I. BACKGROUND

Plaintiff Katherine E. Weaver ("Plaintiff"), originally filed an application based on Title XVI for supplemental security income on April 27, 1999, alleging a disability onset date of January 1, 1999. (Transcript of the Record of Proceedings ("Tr.") 32, 449). After that application was denied initially and on reconsideration, Administrative Law Judge D. Kevin Dugan determined on August 14, 2000, that Plaintiff was disabled as of January 1, 1999. (Tr. 36); (Document No. 1, p.2).

Plaintiff through counsel, now seeks judicial review of a subsequent unfavorable administrative decision on another application for disability benefits. (Document No. 1).

Specifically, on March 6, 2002, Plaintiff filed an application for a period of disability and disability insurance benefits, under Title II of the Social Security Act, 42 U.S.C. § 405 *et seq.*, this time alleging an inability to work due to a disabling condition beginning September 30, 1998. (Document No. 1, p.2); (Tr. 449). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on May 1, 2002, and again after reconsideration on September 12, 2002. (Tr. 449).

On April 20, 2004, Plaintiff appeared and testified at a hearing before Administrative Law Judge Russell R. Sage. (Tr. 22). On May 14, 2004, the ALJ issued an unfavorable decision denying Plaintiff's claim. (Tr. 22-26). Plaintiff filed a request for review of the ALJ's decision on July 6, 2004, which was denied by the Appeals Council on June 10, 2005. (Tr. 5-7, 16). The May 14, 2004 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 5).

On June 21, 2005, Plaintiff appealed the May 14, 2004 decision to the United States District Court for the Western District of North Carolina. (Tr. 473). In an order dated October 21, 2005, this Court granted the Commissioner's request for voluntary remand, pursuant to sentence six of 42 U.S.C. §405(g). (Tr. 449, 484) (3:05-CV-293-GCM, Document No. 10). On March 4, 2006, the Appeals Council vacated the May 14, 2004 decision and remanded the case to an Administrative Law Judge. (Tr. 485-488). The Appeals Council instructed that upon remand an Administrative Law Judge will:

> Provide the claimant and the attorney the opportunity to submit any further relevant medical evidence regarding the claimant's impairments for *the period on and before September 30, 1998.* In addition, the Administrative Law Judge will obtain evidence from a medical expert to clarify the date of onset and assist in identifying the nature and extent of the claimant's impairments for the period through September 30, 1998.

(Tr. 487) (emphasis added).

Pursuant to the Appeals Council's order, Administrative Law Judge, Russell R. Sage ("ALJ") held a hearing on July 25, 2007. (Tr. 449). At that hearing, the ALJ heard testimony from Timothy E. Frei M.D. ("Dr. Frei"), an impartial medical expert, and Dr. Robert H. Ballantyne ("Dr. Ballantyne"), an impartial vocational expert. Id.

On April 23, 2008, the ALJ again issued an unfavorable decision denying Plaintiff's claim. (Tr. 449-465). In that decision, the issue before the ALJ was whether Plaintiff could establish her disability on or before September 30, 1998. (Tr.451). The ALJ opined that the "evidence shows that the claimant's medical condition actually worsened some time after September 30, 1998." In refusing to adopt the residual functional capacity of the August 2000 decision, the ALJ specifically noted that:

> the prior decision date August 2000 did not find that the claimant's substance abuse was an issue, even though the claimant continued to drink after her disability was found to commence on January 1, 1999 . . . . Thus such new and material evidence precludes adoption of the findings set forth in the prior decision of August 2000. Second, the relevant period in question of September 30, 1998, . . . predates the Administrative Law Judge decision of August 2000 and its January 1999 disability onset date. . . . the August 2000 decision found that the claimant suffered from "severe" hypertension, depression, small vessel ischemic brain disease and vertigo. However, the claimant has failed to establish depression or vertigo as medically determinable impairments or small vessel ischemic brain disease as a "severe" impairment during the relevant period of September 30, 1998.

(Tr. 450).

On August 8, 2008, Plaintiff filed a request for review of the ALJ's April 23, 2008 decision, and the Appeals Council denied Plaintiff's review request on September 16, 2010. (Tr. 543-544). The April 23, 2008 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 543).

Plaintiff's "Complaint" seeking a reversal of the ALJ's April 23, 2008 decision was filed in this Court on November 10, 2010. (Document No. 1). Plaintiff's "Motion For Summary Judgment" (Document No. 10) and "Plaintiff's Memorandum In Support Of Motion For Summary Judgment" (Document No. 11), were filed April 4, 2011; and Defendant's "Motion For Summary Judgment" (Document No. 12) and "Memorandum In Support Of Summary Judgment" (Document No. 13), were filed June 6, 2011. The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Graham Mullen is appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599

(4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, for the period on or before the date last insured of September 30, 1998.[1] (Tr. 449). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ concluded that Plaintiff was not under a disability "at any time from the alleged onset date through her date last insured of September 30, 1998." (Tr. 465).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1)    whether claimant is engaged in substantial gainful activity - if yes, not disabled;

---

[1] Under the Social Security Act, 42 U.S.C. § 301, *et seq.*, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

(2)     whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3)     whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4)     whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5)     whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).  In this case, the ALJ determined at the fourth step that Plaintiff was <u>not</u> disabled.  (Tr. 465).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since September 30, 1998, the alleged onset date.  (Tr. 453).  At the second step, the ALJ found that Plaintiff's hypertension, anemia, chronic renal insufficiency, and alcohol dependence were severe impairments.  (Tr. 453).[2]  The ALJ opined that the medical evidence of record showed that Plaintiff was abusing alcohol as early as February 1991, and throughout the relevant period in question.  (Tr. 457).  At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1.  (Tr. 458).

---

[2]  The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage.  <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137 (1987).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform sedentary activity:

> If the claimant stopped the substance abuse, the claimant would have the residual functional capacity to perform the sedentary work as defined in the Regulations during the relevant period, as long as she was not exposed to unprotected heights or other hazards.

(Tr. 458). In making his/her finding, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and SSRs 96-4p and 96-7p. (Tr. 458).

At the fourth step, the ALJ found that Plaintiff could perform her past relevant work as a travel agent. (Tr. 465). Specifically, based on the testimony of the vocational expert, the ALJ concluded that "[s]ince the claimant was able to perform the demands of 'sedentary' work . . . and because her past work did not require exposure to unprotected heights or other hazards, she was able to perform her past relevant work as a travel agent *as that job is generally performed in the national economy* during the relevant period of September 30, 1998." Id. (emphasis added). Therefore, the ALJ determined that Plaintiff was <u>not</u> under a "disability," as defined by the Social Security Act, at any time from the alleged onset date through her date last insured of September 30, 1998. <u>Id.</u>

Plaintiff on appeal to this Court makes the following assignments of error: (1) the ALJ violated SSR 82-62 by failing to provide specific findings or analysis regarding the physical and mental demands of Plaintiff's past relevant work; (2) the ALJ violated 20 C.F.R. §404.1527 by failing to set forth good cause for his rejection of the opinion of Dr. Chaconas; (3) the RFC finding failed to comply with SSR 96-8p because the ALJ failed to include a function-by-function

assessment; and (4) the ALJ erred as a matter of law in evaluating Plaintiff's subjective complaints of pain by failing to apply the regulatory factors set forth in SSR 96-7p and 20 C.F.R. §404.1529 and making a conclusory credibility finding in violation of SSR 96-7p. (Document No. 11, pp.1-2). The undersigned will discuss each of these contentions in turn.

### A. Analysis of Physical and Mental Demands of Plaintiff's Past Relevant Work

In the first assignment of error, Plaintiff argues that "[w]hile the ALJ summarily concluded that the Plaintiff can return to her past relevant work, he provided no specific findings or analysis regarding the physical and mental demands of this work, as required by SSR 82-62." (Document No. 11, p.11). SSR 82-62 provides in pertinent part:

> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
>
> 1. A finding of fact as to the individual's RFC.
>
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
>
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62, "A Disability Claimant's Capacity To Do Past Relevant Work," 1982 WL 31386 at *4 (1982). Plaintiff observes that SSR 82-62 establishes a three-phase analysis that the ALJ had to consider and explain when finding that Plaintiff could return to her past relevant work. (Document No. 11, p.13) (citing Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996)). Plaintiff argues that the ALJ erred in all three phases:

> The ALJ . . . failed to properly consider the opinions of Dr. Chaconas when determining [Plaintiff's] RFC. At no time does the ALJ review or discuss any of the mental and physical demands of [Plaintiff's] prior relevant work, let alone all of them as he is required

8

to do, except to repeat [Plaintiff's] testimony which he found not credible. Because the ALJ failed to properly complete Phases One and Two of the analysis he did not complete Phase Three.

(Document No. 11, p.14).

Defendant argues that the ALJ fulfilled the requirements of SSR 82-62 when he "identified the requirements of Plaintiff's past relevant work as sedentary and skilled, identified Plaintiff's residual functional capacity as limited to sedentary with no exposure to unprotected heights or other hazards, and made an explicit finding that Plaintiff could perform her past relevant work as a travel agent." (Document No. 13, p.16-17) (citing Tr. 465). In support of this contention, Defendant highlights that "the ALJ elicited vocational expert testimony regarding the travel agent job as general[l]y performed in the national economy. The VE testified that the job of travel agent, as generally performed, was sedentary and skilled." (Document No. 13, p.16). In addition, *as noted by Plaintiff*, "Dr. Frei testified that he did not feel Ms. Weaver had a condition that precluded her from doing sedentary work for twelve continuous months prior to September 30, 1998." (Document No. 11, p.9) (citing Tr. 534).

Defendant also argues that the standard for determining whether or not a claimant is able to perform past relevant work is set forth in 20 C.F.R. §404.1560(b)(2), and provides in pertinent part:

> We will ask you for information about work you have done in the past. We may also ask other people who know about your work. (See § 404.1565(b).) We may use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past

> relevant work, **either as the claimant actually performed it or as generally performed in the national economy**.

20 C.F.R. §404.1560(b)(2) (2011) (emphasis added). Defendant contends that "[t]he regulations specifically provide that the ALJ may rely on vocational expert testimony regarding the physical and mental demands of a claimant's past relevant work **as generally performed in the national economy**." (Document No. 13, p.16) (citing 2 C.F.R. §404.1560(b)(2)) (emphasis added).

In light of 20 C.F.R. §404.1560(b)(2), Defendant contends that "Plaintiff has identified no flaw in the VE's testimony, and the ALJ relied on that testimony in determining that Plaintiff was capable of performing her past relevant work as a travel agent as that job is performed in the national economy." (Document No. 13, p.16). Defendant concludes by arguing that since "Plaintiff has not identified an error in the ALJ's determination that she retained the residual functional capacity to perform her past relevant work . . . the ALJ's decision should be affirmed." (Document No. 13, p.17).

When discussing Plaintiff's RFC, the ALJ cited to objective medical findings, the opinions of several reviewing physicians, and Plaintiff's daily activities in support of his conclusion. (Tr. 458-464). For example, the ALJ observed that "the medical evidence shows that the claimant was treated for hypertension in 1996 through 1998. However, progress notes reveal that this condition was well controlled with appropriate medications without adverse side effects." (Tr. 460). The ALJ also noted that Plaintiff "did her own laundry, cleaned her own room, made her own bed, occasionally cooked, paid bills, went to the grocery store and drove." (Tr. 461-462). After discussing Plaintiff's ongoing medical history for the relevant period, the opinions of reviewing physicians, and Plaintiff's daily activities (Tr. 458-464), the ALJ concluded:

> [A]bsent the claimant's alcohol use, her hypertension, anemia, and chronic renal insufficiency and accompanying symptoms and fatigue continued to be 'severe' impairments. Nevertheless, they did not preclude her from lifting up to 10 pounds occasionally or lifting up to 5 pounds frequently, standing and/or walking up to 2 hours in an 8-hour work day, sitting six hours in an 8-hour workday or otherwise performing the demands of 'sedentary' work as defined in the Regulations, as long as she was not exposed to unprotected heights or other hazards.

(Tr. 464). The ALJ appears to have relied upon substantial evidence within the record to support his RFC finding; thus, the first phase of the required analysis as set forth in 20 C.F.R. §404.1560(b)(2) was met.

As to the second phase of the analysis, the undersigned notes that the ALJ made the following findings about the physical and mental demands of Plaintiff's past relevant work:

> The claimant testified that her past work as a travel agent required her to stand and walk 85 percent of the time and occasionally lift boxes weighing up to 50 pounds. Accordingly, I note that the claimant's past work as a travel agent as she performed it was "light" to "medium" in exertion. However, Dr. Robert Ballantyne, a vocational expert, testified that according to the <u>Dictionary of Occupational Titles</u>, the claimant's past relevant work as a travel agent was a "skilled" and "sedentary" job as generally performed in the national economy.

(Tr. 465). The record indicates that the ALJ obtained testimony during the hearing from both Plaintiff and a vocational expert in order to gain an accurate description of the physical and mental demands of Plaintiff's former job as a travel agent. (Tr. 520-522, 539). For example, Plaintiff testified that she spent 85% of her day standing or walking around, lifted "boxes of brochures . . . [that] normally came in 50-pound sizes . . . [carried] three to five boxes a week, [and] sometimes

during season . . . up to a dozen or more boxes about every other day." (Tr. 520-521). In addition to the lifting requirements, Plaintiff also testified that she

> was the only one in the agency . . . all the work pretty much came to me from putting up the brochures, the brochures came in packages of about 50 pounds. Gathering those, waiting on personnel -- the clients, and planning their trips, doing repairing of machinery that needed to be repaired as far as ticketing, just about any aspect that you could imagine in an office. I did it all.

(Tr. 520)(emphasis added).

Later in the hearing, Dr. Robert W. Ballantyne, a VE, testified that "[t]ravel agent will classify – the DOT will classify that position as sedentary from an exertional standpoint, and skilled." (Tr. 539). The foregoing evidence from the record demonstrates that the ALJ complied with SSR 82-62 by obtaining information about the physical and mental demands of Plaintiff's former position as a travel agent, and the ALJ also included this information within his decision (Tr. 465); thus, the ALJ met the requirements of the second prong of the analysis.

Finally, the undersigned notes that the ALJ made the decision that Plaintiff was still capable of performing her past work as a travel agent only after making an RFC finding based upon the totality of the evidence within the record and obtaining the testimony of a vocational expert regarding the physical and mental demands of Plaintiff's past relevant work. (Tr. 465). Thus, the ALJ appears to have relied upon substantial evidence within the record in reaching his decision, and he adequately fulfilled the requirements of the three-phase analysis set forth in SSR 82-62.

### B. Weight Afforded to Dr. Aris Chaconas's Opinion

Next, Plaintiff asserts that the "ALJ violated 20 C.F.R. §404.1527 in failing to set forth good cause for his rejection of the opinion of Dr. Chaconas." (Document No. 11, p.15). In particular, Plaintiff argues that the ALJ wrote:

> Dr. Chaconas opined that there was adequate documentation of red blood cell anemia, which had required a blood transfusion, associated low blood pressure with orthostatic hypotension and chronic renal insufficiency prior to September 30, 1998. As this opinion is clearly supported by the medical evidence of record and the testimony of the medical expert, as discussed above, I have given it substantial weight.'

(Tr. 462). Plaintiff contends that the ALJ later contradicted himself by stating, "[a]ccordingly, I have given little weight to Dr. Chaconas' opinion that the claimant was disabled from performing all levels of work during the relevant period of on or prior to September 30, 1998." (Document No. 11, p.16) (citing Tr. 463).

Plaintiff also contends that the ALJ further contradicted himself by concluding that "drinking was a factor at the time period in question." (Document No. 11, p.17). Plaintiff concludes by noting that "[t]here is ample support for Dr. Chaconas' opinion in the record as was found by the ALJ himself. This is clearly reversible error requiring remand." (Document No. 11, p.17).

Defendant argues that the ALJ properly afforded little weight to Dr. Chaconas's opinion because "[t]he ALJ, recognizing the conflict between Dr. Frei's and Dr. Chaconas's opinion[s] . . . . assessed the opinions and explained why he ultimately favored Dr. Frei's opinion." (Document No. 13, p.13) (citing Tr. 462-464). Defendant observes that "[a]t the heart of Plaintiff's case is the role that alcohol played in her impairments and functional limitations . . . Dr. Chaconas's opinion

does not address this issue, since it does not address or acknowledge the role Plaintiff's alcohol use played in the etiology and exacerbation of her conditions." (Document No. 13, pp.11-12). Defendant also notes that "Dr. Chaconas's opinion was inconsistent with Dr. Frei's opinion, and inconsistent with the opinions of the state agency reviewing physicians." (Document No. 13, p.13). Defendant contends that "the ALJ reasonably gave greater weight to the opinion of testifying medical expert Dr. Frei, who grappled with the role that Plaintiff's alcohol use played in her conditions, symptoms, and limitations." (Document No. 13, p.13).

In addition, Defendant argues that the ALJ's statements regarding Dr. Chaconas's opinion were not contradictory, and that "the ALJ gave good reasons for adopting some, but not all, of Dr. Chaconas's opinions." (Document No. 13, p.14). Defendant also points out that, contrary to Plaintiff's assertion, drinking was an issue throughout the relevant period of time, and the ALJ recognized this issue within his decision:

> The only evidence from around Plaintiff's last date insured on September 30, 1998, was her hospitalization from August 30, 1998 through September 3, 2008. As the ALJ noted, Plaintiff testified that she was probably drinking when she sustained the accident leading to her hospitalization. Additionally, the ALJ found that Plaintiff was dependent on alcohol for five years preceding April 1999, a finding supported by Plaintiff's testimony.

(Document No. 13, p.15). Defendant concludes by arguing that "[s]ubstantial evidence supports the ALJ's weighing of the conflicting medical opinion evidence, and his findings should not be disturbed." (Document No. 13, p.15).

The undersigned finds the Defendant's arguments to be persuasive on this issue. When addressing Dr. Chaconas's opinion, the ALJ provides the following relevant discussion within his decision:

> Drinking was very much an issue in September 1998 . . . The claimant did not remain sober for more than a few months at a time until April 1999. As Dr. Chaconas's opinion does not address the alcohol abuse issue, I find that it is not a valid assessment of the claimant's residual functional capacity during the relevant period. Additionally, Dr. Chaconas's opinion regarding the claimant's limitations was based solely on his review of the claimant's medical records. Dr. Chaconas never saw or examined the claimant. Furthermore, his opinion regarding the severity and functional limitations imposed by the claimant's medical condition during the relevant period was not supported by the preponderance of other evidence in the record, including the opinion of Dr. Frei. Moreover, none of the claimant's treating or examining physicians during the relevant period placed any restrictions on the claimant's ability to work during that time.

(Tr. 463) (emphasis added).

The ALJ appears to have relied upon substantial evidence within the record that was inconsistent with Dr. Chaconas's opinion. The ALJ specifically highlights inconsistencies between Dr. Chaconas's opinion and the testimony of Dr. Frei, the opinion of Dr. Kauffman, Plaintiff's own testimony about her substance abuse problems, and the opinions of the state agency physicians. (Tr. 462-464). In his decision, the ALJ noted:

> Dr. Frei, the medical expert, testified that Dr. Chaconas' opinion was not entirely supported. He noted that the claimant's chronic renal failure was not severe enough to cause any significant anemia . . . Furthermore, Dr. Frei opined that the claimant's condition may have precluded her from performing substantial gainful activity for only a brief period of time, but not for a period of 12 continuous months. While Dr. Frei also did not examine the patient, his opinions are more consistent with the actual objective evidence of record than those of Dr. Chaconas. Dr. Frei's opinions are also more consistent with the claimant's testimony regarding her alcohol abuse during the relevant period, and the fact that she was still able to perform volunteer work and other activities despite her allegations of fatigue, dizziness, etc.

(Tr. 463) (emphasis added). The ALJ's decision adequately explained his reasoning for affording little weight to Dr. Chaconas's opinion, and he also cited to substantial evidence in the record, including objective medical evidence and the opinions of other physicians, to highlight the inconsistencies of Dr. Chaconas's opinion.

Defendant also correctly notes that "the ALJ found that Plaintiff was dependent on alcohol for the five years preceding April 1999, a finding supported by Plaintiff's testimony and statements to her physician. Dr. Chaconas's opinion did not address this significant fact, while Dr. Frei's testimony did." (Document No. 13, p.15) (citing Tr. 457). In his decision, the ALJ made the following conclusion about Plaintiff's alcohol substance abuse:

> Based on the preponderance of the medical evidence of record discussed . . . I note that the evidence shows that prior to April 1999, the claimant maintained sobriety for no more than a few months at a time despite several attempts at alcohol rehabilitation. The evidence shows that at times the claimant was in denial about her alcohol abuse, but on other occasions she freely admitted that she had a drinking problem. Moreover, the claimant continued to drink despite the adverse effects it had on her health. Accordingly, I find that during the relevant period in question, the claimant did not have the ability to voluntarily control her alcohol use. The claimant's alcohol dependence markedly interfered with her concentration, persistence and pace, and otherwise precluded her from performing the mental demands of even "unskilled" work on regular and continuing basis.

(Tr. 457-458) (emphasis added).

Based upon the foregoing, it appears that the ALJ's decision to afford little weight to Dr. Chaconas's opinion is supported by substantial evidence within the record, and the undersigned will not recommend remand based upon this issue.

## C. Inclusion of a Function-By-Function Analysis in the RFC Finding

Next, Plaintiff argues that the "ALJ's RFC finding failed to comply with SSR 96-8p in that he failed to include a function-by-function assessment." (Document No. 11, p.17). SSR 96-8p provides in pertinent part:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

(Document No. 11, p.17) (citing SSR 96-8p, "Assessing Residual Functional Capacity in Initial Claims," 1996 WL 374184 at *1 (July 2, 1996)). Plaintiff contends that "[a] proper RFC assessment must address both the remaining exertional and nonexertional capabilities of the individual." (Document No. 11, p.18) (citing Southard v. Barnhart, No. 02-7102 (10th Cir. 2003)). Plaintiff concludes by noting that "[t]he ALJ makes no statement that he conducted a function-by-function assessment and no documentation of such an assessment is contained in the ALJ's decision." (Document No. 11, pp.18-19). Plaintiff argues that the ALJ's decision could not be based upon substantial evidence within the record because it "fails to comply with the principles outlined in SSR 96-8p." (Document No. 11, p.19).

Defendant contends that "[t]he ALJ did not err by declining to engage in the superfluous and irrelevant exercise of listing all of the functions that Plaintiff could perform without limitation." (Document No. 13, pp.7-8). In support of this contention, Defendant notes that several other courts have not required a function-by-function analysis. For example, in Zatz v. Astrue, the Seventh Circuit found that "an ALJ need not provide superfluous analysis of irrelevant limitations or relevant

limitations about which there is no conflicting medical evidence." (Document No. 13, p.7) (citing Zatz v. Astrue, 346 F.Appx 107, 111-112 (7th Cir. 2009)). Defendant notes that the present case is similar to that of Zatz by highlighting that "Plaintiff [here, as in Zatz,] points to no additional limitation the ALJ should have included." (Document No. 13, p.7). Defendant argues that since "Plaintiff has failed to present evidence that contradicts the ALJ's decision, the Plaintiff's contention that the ALJ's decision should be remanded is unavailing." (Document No. 13, p.7).

The undersigned finds Defendant's argument to be persuasive on this issue. The court in Zatz provided the following insight into the question of whether or not a function-by-function assessment is required for every RFC finding:

> Although the ALJ could have been more explicit in his findings, his duty under SSR 96-8p is not as onerous as Zatz suggests. A function-by-function assessment of an individual's limitations ensures that the ALJ does not overlook an important restriction and thereby incorrectly classify the individual's capacity for work. See SSR 96-8p, 1996 WL 374184, at *4. But an ALJ need not provide superfluous analysis of irrelevant limitations or relevant limitations about which there is no conflicting medical evidence . . .
>
> Zatz has not pointed to any evidence undermining the ALJ's conclusion that he has no limitations other than the inability to lift more than 20 pounds, nor does he even specify what particular functions the ALJ should have, but did not, explicitly assess. The ALJ built an "accurate and logical bridge" from the evidence to his conclusions, see Craft v. Astrue, 539 F.3d 668, 673 (7th Cir. 2008) (internal quotations marks and citation omitted), and we are satisfied that his decision is supported by substantial evidence.

Zatz v. Astrue, 346 Fed.Appx. 107, 112 (7th Cir. 2009); See also, Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (addressing issue of an ALJ who did not perform a function-by-function analysis, the court held that "[w]e will affirm the ALJ's determination of Bayliss's RFC if the ALJ applied the proper legal standard and his decision is supported by substantial evidence."); Depover

v. Barnhart, 349 F.3d 563, 567-68 (8th Cir. 2003) (upholding the decision of an ALJ who did not perform a function-by-function analysis where evidence supported the conclusion, and "although we would have preferred that he had made specific findings as to sitting, standing, and walking, we do not believe that he overlooked those functions. We think instead that the record reflects that the ALJ implicitly found that Mr. Depover was not limited in these areas.").

In the present case, the Plaintiff has failed to present a claim that the ALJ did not consider any particular evidence that might have established the presence of an additional limitation had a function-by-function analysis been performed; rather, Plaintiff merely asserts that the analysis must be done as a formality, even if completing the analysis would contribute nothing new or relevant to the actual RFC determination.

The undersigned notes that it appears that the ALJ properly evaluated all the medical evidence available to him, analyzed Plaintiff's limitations in light of the evidence on the record and concluded:

> Absent claimant's alcohol use, her hypertension, anemia and chronic renal insufficiency and accompanying symptoms and fatigue continued to be 'severe' impairments. Nevertheless, they did not preclude her from lifting up to 10 pounds occasionally or lifting up to 5 pounds frequently, standing and/or walking up to 2 hours in an 8-hour workday, sitting about 6 hours in an 8-hour workday or otherwise performing the demands of 'sedentary' work as defined in the Regulations, as long as she was not exposed to unprotected heights or other hazards.

(Tr. 464). The undersigned is persuaded that this conclusion is based upon substantial evidence in the record. The undersigned will not recommend remand based upon this issue.

**D. Credibility Finding About Plaintiff's Subjective Complaints**

Finally, Plaintiff contends that the "ALJ erred as a matter of law in evaluating [Plaintiff's] subjective complaints in failing to apply the regulatory factors set forth in SSR 96-7p and 20 C.F.R. §404.1529 and making a conclusory credibility finding in violation of SSR 96-7p." (Document No. 11, p.19).   When weighing a claimant's subjective complaints, SSR 96-7p recognizes that "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," and allows the ALJ to consider the following relevant factors: daily activities; location, duration, and intensity of individual's pain; type, dosage, and effectiveness of medication; other treatments obtained for relief of pain or symptoms; and any other factors concerning functional limitations and restrictions due to the pain.   SSR 96-7p, "Evaluation of Symptoms in Disability Claims," 1996 WL 374186 at *3 (July 2, 1996).

Plaintiff also notes that SSR 96-7p places the following burden on the ALJ:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."   It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.   The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

(Document No. 11, p.20) (citing SSR 96-7p, 1996 WL 374186 at *2 (July 2, 1996)).   Plaintiff contends that "the ALJ merely summarizes some medical records and he never again addresses Ms. Weaver's credibility except when he says, 'Additionally, at the prior hearing held in April 2004, the claimant testified that in 1998 she did her own laundry, cleaned her own room, made her own bed,

occasionally cooked, paid bills, went to the grocery store and drove . . . Clearly, th[ese] activities are inconsistent with a finding of disability."  (Document No. 11, pp.20-21).

Defendant contends that the ALJ did fulfill the requirements of SSR 96-7p by "giv[ing] good reasons for declining to fully credit Plaintiff's allegations of disabling symptoms in the absence of alcohol abuse." (Document No. 13, p.11).  In support of this contention, Defendant points to another portion of SSR 96-7p, which provides:

> One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.  The adjudicator must consider such factors as:
>
> * The degree to which the individual's statements are consistent with the medical signs and laboratory findings and other information provided by medical sources, including information about medical history and treatment.
>
> *The consistency of the individual's statements with other information in the case record, including reports and observations by other persons concerning the individual's daily activities, behavior, and efforts to work.  This includes any observations recorded by SSA employees in interviews and observations recorded by the adjudicator in administrative proceedings.

(Document No. 13, p.11) (citing SSR 96-7p, 1996 WL 374186 at *5 (July 6, 1996)) (emphasis added).  Defendant notes that "[a]s the ALJ explained, Plaintiff's medical records did not corroborate the alleged severity of her limitations." (Document No. 13, p.9).  For example, the ALJ specifically noted that "Plaintiff's long gap in treatment between March 1998 and May 1999 [was] significant.  Plaintiff's only intervening medical treatment during that period was her August 1998 hospitalization, which she conceded likely occurred as a result of her alcohol use." (Document No. 13, pp.9-10).

Defendant also points to the ALJ's explanation that "Plaintiff testified in April 2004 that, in 1998, she did her own laundry, cleaned her own room, made her own bed, cooked, paid bills, went to the grocery store, and drove. This evidence further supports the ALJ's credibility determination." (Document No. 13, p.10) (citing Tr. 433-434, 461-462). Defendant contends that "[t]he ALJ reasonably concluded that Plaintiff's allegations were inconsistent with the objective medical evidence, inconsistent with her reports and statements to [her] treating physicians, and inconsistent with the medical opinion evidence." (Document No. 13, p.11).

The undersigned finds the Defendant's arguments on this issue to be persuasive. It appears that the ALJ relied upon substantial evidence within the record when he made his decision to discredit Plaintiff's subjective complaints. Specifically, the ALJ identified multiple instances in which the medical record, reviewing physicians' opinions, and Plaintiff's daily activities were inconsistent with Plaintiff's subjective complaints about her symptoms.

For example, the ALJ noted that "[t]he medical evidence shows that the claimant was treated for hypertension in 1996 through 1998. However, progress notes reveal that this condition was well controlled with appropriate medications without adverse side effects." (Tr. 460). In addition, the ALJ noted that "[a]lthough hospitalized in early January 1998 for complaints of a seizure and memory loss, these conditions were directly attributed to the claimant's alcohol abuse. Her associated symptoms dramatically improved within 24 hours. In fact, the only discharge instruction was that she attend Alcoholic's Anonymous." (Tr. 460).

The ALJ also noted that "Mr. Taylor, the claimant's travel agency business partner, testified that during 1998 the claimant was more calm and that 'her health wasn't in such bad shape,' except sometimes she would get pretty bad because of her drinking." (Tr. 462). Finally, the ALJ observed

that "[t]here is no evidence that the claimant suffered from any adverse side effects from her medications or other treatments." (Tr. 462).

The undersigned finds that the ALJ complied with the analysis set forth in SSR 96-7p by weighing Plaintiff's subjective complaints against the objective medical record, Plaintiff's daily activities, and evidence in the record of Plaintiff's medications and the extent to which those medications relieved Plaintiff's symptoms. (Tr. 459-462). In short, substantial evidence appears to support the ALJ's decision to discredit Plaintiff's subjective complaints; the medical record and Plaintiff's daily activities are clearly inconsistent with Plaintiff's testimony.

## IV. CONCLUSION

In the end, the ALJ concluded that "the claimant is under a disability, but that a substance use disorder was a contributing factor material to the determination of disability during the relevant period in question." (Tr. 451). "If the claimant's alcohol or drug use is a contributing factor, then the claimant is not disabled and not entitled to benefits." Snoddy v. Commissioner, 2010 WL 1473814 at *2 (W.D.Va. 2010) (citing 42 U.S.C. § 423(d)(2)(C).

Here, the ALJ determined that Plaintiff would have been able to perform her past relevant work as generally performed and "would not be disabled if she stopped the substance use," and therefore, was "not under a disability during the relevant period." (Tr. 465) (citing 20 C.F.R. 404.1520(f) and 20 C.F.R. 404.1535); see Cobb v. Astrue, 2009 WL 3206731 at *2 (M.D.N.C. Sept. 30, 2009) ("Finally, the ALJ concluded that if she stopped her alcohol use, Plaintiff would be able to perform her past relevant work as a travel agency owner/manager. Thus, the ALJ found that Plaintiff's alcohol use is a contributing factor material to the determination of disability and claimant is not disabled within the meaning of the Social Security Act"). Moreover, Plaintiff has failed to

carry her burden of showing that alcohol was not a contributing factor.  See Sanders v. Apfel, 2001 WL 114360 at *6 (W.D.N.C. Jan. 26, 2001) (citing Brown v. Apfel, 192 F.3d 492, 498 (5th Cir.1999) ("The Plaintiff has the burden of proving that his drug abuse and/or alcoholism are not contributing factors material to the determination of his disability")); see also, Phasoulas v. Astrue, 2011 WL 2447455 at *2 (W.D.N.C. May 18, 2011).

Based upon the foregoing, the undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).  As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V.  RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion For Summary Judgment" (Document No. 10) be **DENIED**;  Defendant's "Motion For Summary Judgment" (Document No. 12) be **GRANTED**;  and the Commissioner's determination be **AFFIRMED**.

## VI.  TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court.  Diamond

v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Diamond, 416 F.3d at 316;  Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989);  Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Graham Mullen.

**IT IS SO RECOMMENDED**.

Signed: August 10, 2011

David C. Keesler
United States Magistrate Judge